JJD:PGS
F. #2015R00098

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    15-CR-087 (S-2)(JFB)

    - against -

SERGIO CERNA,
    also known as "Taz" and
    "Lechon," and
EDWIN ACOSTA-MARTINEZ,
    also known as "Scarface,"

               Defendants.

- - - - - - - - - - - - - - - - - X


## GOVERNTMENT'S MOTION IN LIMINE IN SUPPORT OF ITS REQUEST FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY


                                 ROBERT L. CAPERS
                                 United States Attorney
                                 Eastern District of New York
                                 610 Federal Plaza
                                 Central Islip, New York 11722

John J. Durham
Paul G. Scotti
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government hereby moves this Court to empanel an anonymous jury at the May 2016 trial of the defendants SERGIO CERNA, also known as "Taz" and "Lechon," and EDWIN ACOSTA-MARTINEZ, also known as "Scarface," who are referred to herein as the "defendants." Specifically, the government requests that the names, addresses and places of employment of the prospective jurors not be revealed to either the parties or their attorneys. Further, the government requests that, from the time each juror survives any challenges for cause and peremptory challenges until the end of the trial, the jurors be directed to park their vehicles in the federal employee parking lot in the rear of the courthouse, and to enter and exit the building through its rear entrance. Such alternate access will allow the jury members to avoid coming in contact with members of the public and the press.

As set forth more fully below, empanelling an anonymous jury and directing the jurors to park in the employee parking lot is warranted due to: (a) the serious nature of the crimes charged, which includes a series of vicious murders, attempted murders, assaults and related conspiracy and firearms offenses; (b) the defendants' membership in La Mara Salvatrucha, also known as the MS-13 (hereinafter, the "MS-13"), an

2

international criminal organization; (c) the fact that the MS-13 has engaged in a pattern of obstruction of justice, including witness tampering and witness retaliation, over the past several years, including those incidents described below; (d) the fact that CERNA is charged, inter alia, with the murders of Enston and Ricardo Ceron and the obstruction of justice attempted murder in connection with the shooting of John Doe #4 in order to prevent him from testifying; (e) the fact that cooperating defendants who were expected to testify against ACOSTA-MARTINEZ in a previous trial were threatened; (f) the fact that countless MS-13 members remain at liberty on Long Island and elsewhere; and (g) this case has already received coverage in the media. Accordingly, the government respectfully submits that the proposed measures are necessary to assure the public's right to a fair trial by protecting the jury from interference and intimidation. Moreover, as set forth below, those precautions will not deprive the defendants of their right to meaningful jury selection, nor diminish the presumption of innocence.

## STATEMENT OF FACTS

A. The MS-13 Has The Means, Motive and Inclination To Interfere With The Jury

At trial, the evidence will establish that the defendants are members of the MS-13, an international criminal organization with global reach, which is comprised of cliques not only throughout Long Island, but across the United States and Central America. Even though dozens of MS-13 leaders, members and associates from Long Island have been arrested and incarcerated within the past several years, many other gang members remain at liberty, for now, on Long Island. Notwithstanding the fact that the trial defendants are incarcerated, the MS-13 clearly has the means, motive and inclination to interfere with the jury, just as it has interfered and attempted to interfere with numerous witnesses in recent MS-13 prosecutions, including the instant indictment. Therefore, the defendants' current incarceration is no guarantee that the MS-13 will not continue, in the face of significant prison sentences, to engage in violence and interfere with the judicial process during the trial.

B. The Defendants Are Charged With Serious Crimes

It is self-evident that the defendants are charged with serious and violent crimes. Specifically, the defendants

are charged with participating in three murders, including the November 2, 2011 murder of Brandon Sotomayor and the December 18, 2011 murders of Enston and Ricardo Ceron, as well as the May 12, 2011 attempted murder and assault of John Doe #2, the September 11, 2011 attempted murder and assault of John Doe #3, an October 2011 conspiracy to murder rival gang members, the December 18, 2011 attempted murder, assault and obstruction of justice attempted murder of John Doe #4, the December 22, 2011 attempted murder and assault of John Doe #5, and a series of armed robberies. The serious nature of the crimes alleged to have been committed by the defendants favors empanelling any anonymous and partially sequestered jury, insofar as the jurors could reasonably feel endangered after hearing testimony regarding the violent crimes carried out by the defendants, which terrorized the victims. Maintaining juror anonymity and partially sequestering the jury is warranted here in light of the serious and violent nature of the charges against the defendants, as well as the defendants' membership in the MS-13, a large-scale, violent gang with numerous members still at large, many of whom have demonstrated both the means and the willingness to obstruct justice.

5

C.   The MS-13 Street Gang Has Evinced Both a Clear Intent
     And Capability to Interfere With the Judicial Process

There are numerous incidents, both in the instant indictment and other indictments in the Eastern District of New York, where Long Island MS-13 members have attempted to interfere with the judicial process and have retaliated against individuals believed, correctly or incorrectly, to have cooperated with law enforcement authorities.  For example:

(1) Between November 2009 and December 2009, defendant ELENILSON ORTIZ, together with others, attempted to intimidate, threaten or corruptly persuade a witness from testifying in a federal grand jury proceeding in Central Islip concerning an attempted murder and assault committed by ORTIZ and co-defendants GIOVANNI PRADO and ERICK ALVARADO.  See 10-CR-074 (JFB), Third Superseding Indictment, Count 40.  ORTIZ pled guilty to that charge.

(2) In November 2010, ORTIZ and defendant DAVID VALLE attempted to intimidate, threaten or corruptly persuade a federal witness from testifying concerning the October 22, 2009 conspiracy to murder and murder of Jairo Vasquez by VALLE and other MS-13 gang members.  Id., Count 67.

(3) Between September 2010 and December 2010, defendant FRANCISCO RAMOS, together with other MS-13 members,

6

conspired to commit the murders of three individuals for the purpose of preventing them from cooperating with law enforcement regarding assaults committed by other MS-13 members. Id., Count 68. RAMOS later pled guilty to conspiring to kill the three witnesses.

(4) On April 18, 2011, defendant EMILIO SABALLOS pleaded guilty to attempting to intimidate witnesses on behalf of the MS-13 gang to prevent them from cooperating with a federal investigation. The individuals who SABALLOS admitted to having tampered with were the same witnesses who witnessed an assault that PRADO, ALVARADO and ORTIZ were charged with having committed. Id., Counts 36-38.

(5) On January 3, 2011, defendant JOSE SALAZAR ERAZO pleaded guilty to the commission of a baseball bat assault of a victim on behalf of the MS-13 that occurred on May 30, 2010. The victim of Erazo's assault was an individual who was related to a witness who observed an assault by MS-13 members. ERAZO allocuted that the assault was done in retaliation for that earlier incident. 10-CR-074 (JFB), Second Superseding Indictment, Count 40.

(6) On May 3, 2011, RAMOS attacked another inmate at the Nassau County Correction Center, who RAMOS believed was cooperating with law enforcement authorities. RAMOS charged at

7

the victim, punched him in the face and grabbed him by the throat. Corrections officers, who witnessed the attack, quickly separated the two inmates. Before they were separated, RAMOS inflicted injuries on the victim, including giving him a swollen lip and scratches on his throat. During, and immediately following, the attack, RAMOS made a number of statements directed at the victim, including, in sum and substance: (a) you are a fucking "chota rata" (which roughly translates to English as "snitching rat"); (b) you gave me, "Shorty" [ORTIZ] and "Niño" [VALLE] new charges; (c) you set me up on the video with the Colombian and gave me up about my weapon [a shank]; and (d) "we're going to get you and kill you, you rata."

(7) Rigoberto Gomez was a member of the Sailors clique of the MS-13. The Sailors clique suspected that Gomez was cooperating with the Suffolk County Police Department and put a "green light" on Gomez, authorizing other MS-13 members to kill Gomez. In the early morning hours of August 31, 2010, MS-13 members HECTOR TORRES, who belonged to the same clique of the MS-13 as CERNA, the Brentwood Locos Salvatruchas ("BLS"), together with DELIS LAZO, a Sailors clique member, killed Gomez in Freeman Avenue Park in Brentwood, shooting him in the head three times with a .357 caliber revolver. Thereafter, TORRES

8

was arrested and indicted on charges of conspiracy to commit murder in aid of racketeering, murder in aid of racketeering, discharge of a firearm in connection with a crime of violence, and discharging a firearm resulting in death, in violation of 18 U.S.C. §§ 1959(a)(1), 1959(a)(5), 924(c)(1)(A)(iii) and 924(j). United States v. Alvarenga, et al., 12-CR-063 (S-4)(JFB), Counts 1-2 (Racketeering Act 10) and 32-35.  On August 6, 2014, TORRES pled guilty to Count One, including Racketeering Act 10B, relating to the Gomez murder.

(8) Bayron Vasquez-Nunez was a member of the BLS clique of the MS-13 who was believed by the gang to have cooperated with Suffolk County authorities.  On September 9, 2010, Vasquez-Nunez, was murdered near a playground in Brentwood by MS-13 member JOSE ALVARENGA and another MS-13 member, who shot Vasquez-Nunez in the head multiple times with a .357 caliber revolver.  ALVARENGA was indicted and charged with conspiracy to commit murder in aid of racketeering, murder in aid of racketeering, discharge of a firearm in connection with a crime of violence and discharging a firearm resulting in death, in violation of 18 U.S.C. §§ 1959(a)(1), 1959(a)(5), 924(c)(1)(A)(iii) and 924(j).  United States v. Alvarenga, et al., 12-CR-063 (S-4)(JFB), Counts 1-2 (Racketeering Act 11), 36-

39.    On April 10, 2014, ALVARENGA pled guilty to Count One, including Racketeering Act 11, relating to the Vasquez-Nunez murder.

(9)    The MS-13 wrongly believed that a member of the MS-13 who was arrested by federal authorities and incarcerated at the Metropolitan Detention Center ("MDC") was cooperating with the government.    On June 28, 2011, MS-13 members, including defendant DIEGO NINOS, lured the victim into a jail cell, placed a noose around the victim's neck, and repeatedly struck the victim with locks placed inside of socks.    NINOS, who had previously pleaded guilty to conspiracy to commit murder in aid of racketeering in the Prado et al. Third Superseding Indictment, was additionally charged with conspiracy to commit assault in aid of racketeering, assault in aid of racketeering and witness retaliation, in violation of 18 U.S.C. §§ 1959(a)(6), 1959(a)(3) and 1513(b)(2).    10-CR-074 (JFB), Fourth Superseding Indictment, Counts 59-61.    NINOS pleaded guilty to witness retaliation.

(10)    A confidential informant ("CI") assisted the government in the investigation of a number of murders committed by members of the MS-13, including the Vanessa Argueta and Diego Torres murders committed by Heriberto Martinez, Adalberto Ariel

10

Guzman, Rene Mendez Mejia and Juan Garcia. Subsequent to the arrest of those defendants and a number of other MS-13 members, several cliques of the MS-13 actively searched for the CI in order to kill him/her due to his/her cooperation with the government.

(11) On March 15, 2014, MS-13 member CARLOS VELASQUEZ, who belonged to the Huntington Criminales Locos Salvatruchas ("HCLS"), the same clique of the MS-13 as ACOSTA-MARTINEZ, and who was ACOSTA-MARTINEZ's co-conspirator in numerous armed robbery and firearms counts in the United States v. Alvarenga et al., 12-CR-063 (JFB), matter, and another MS-13 member, RAUL ESCOBAR-SARAVIA, attacked another inmate at the MDC with metal locks placed inside of socks, striking the victim repeatedly with the locks and sending him to the hospital for injuries throughout his body. When CARLOS VELASQUEZ was asked why they assaulted the other inmate, CARLOS VELASQUEZ responded that "[the victim"] is a snitch."

(12) Additionally, two cooperating defendants, who were expected to testify in the June 2014 trial of ACOSTA-MARTINEZ and co-defendants JEFFREY ROSALES and CARLOS VELASQUEZ, informed the government that threats were relayed to their

11

family members and/or friends by MS-13 members and associates, because of the witnesses' anticipated testimony.

In addition to the above examples of obstructive conduct by other members of the MS-13, CERNA is charged with committing the December 18, 2011 murders of Enston and Ricardo Ceron because Enston Ceron was not complying with the rules of the gang and the MS-13 was concerned that he might cooperate if he was arrested by law enforcement authorities. CERNA's co-conspirator in the Ceron murders, ARNOLVIN UMANZOR VELASQUEZ, pled guilty and admitted to killing the Ceron brothers for that reason. Further, CERNA is charged with obstruction of justice offenses in connection with the attempted murder of John Doe #4, in order to prevent him from testifying regarding CERNA and ARNOLVIN UMANZOR VELASQUEZ's participation in the murders of Enston and Ricardo Ceron. See Counts 1 and 2, Racketeering Act 8B and Counts 28-29. The evidence at trial will establish, in sum and substance, that John Doe #4 was a Good Samaritan, who came upon the scene of the murders of Enston and Ricardo Ceron. In order to try to prevent John Doe #4 from being a witness against them, CERNA shot John Doe #4 in the chest.

The above incidents are non-exhaustive examples of witness tampering and witness retaliation engaged in by members

and associates of the MS-13, which demonstrate the gang's persistent and continuing attempts to disrupt the judicial process.  Given these continued attempts to subvert the judicial process, including conduct by the defendants charged in the instant indictment, as well as by other MS-13 members and associates, who have done so on behalf of the co-defendants in the instant indictment, an anonymous and partially sequestered jury is necessary and appropriate in this case.

ARGUMENT

As it has done in other recent trials of MS-13 members, the Court should order an anonymous jury, and direct that, during the trial, jurors park and enter the courthouse in the rear of the building in order to ensure juror safety and the integrity of the judicial process. See United States v. Prado et al., 10-CR-074 (JFB), Document No. 623, and 2011 U.S. Dist. LEXIS 86631 (Aug. 5, 2011); United States v. Heriberto Martinez/Carlos Ortega, 10-CR-074/12-CR-293 (JFB), Document Nos. 1104/47 (respectively) (December 19, 2012); United States v. Adalberto Ariel Guzman, 10-CR-074 (JFB), Document No. 1307 (July 10, 2013; decision not reflected on minute entry); United States v. Alvarenga et al. (Trial Group I, which included ACOSTA-MARTINEZ), 12-CR-063 (JFB), Document No. 330 (May 28, 2014); and United States v. Edwin Hernandez, 12-CR-063 (JFB), Document No. 415 (January 6, 2015). Indeed, even if the defendants and their fellow MS-13 members do not attempt to intimidate or harm jurors, the empanelling of an anonymous jury will significantly reduce the chance that jurors would be concerned for their own safety and thus distracted from the evidence. Additionally, the Court will be able to protect the defendants' rights to an informed jury selection process and an impartial jury through a

14

thorough voir dire and a neutral instruction by the Court explaining the procedures to be used, similar to what was used in the above-referenced trials.

A.  Juror Anonymity Will Ensure An Impartial Jury

1.  Legal Standard

"[C]ourts must protect the integrity of criminal trials" against jury tampering, "whether it emanate[s] from defendants' enemies, from their friends, or from neither." United States v. Borelli, 336 F.2d 376, 392 (2d Cir. 1964) (Friendly, J.).  The Second Circuit routinely affirms district courts' use of anonymous juries to protect the integrity of the judicial process and ensure a fair, impartial jury for both parties.  See, e.g., United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012); United States v. Gotti, 459 F.3d 296, 345-46 (2d Cir. 2006); United States v. Aulicino, 44 F.3d 1102, 1116-17 (2d Cir. 1995); United States v. Wong, 40 F.3d 1347, 1376-77 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1191-93 (2d Cir. 1991).  In a recent summary order, the Second Circuit approved of this Court's empanelment of an anonymous and partially sequestered jury in another MS-13 murder trial, finding that "[t]here was substantial evidence of attempted and actual interference with the judicial process by [the trial

15

defendants'] codefendants, [] the crimes charged were extremely violent, [] and [the trial defendants] were members of a large, well-organized, and violent gang with many members who were not incarcerated." United States v. Prado et al., Summary Order, 13-2894 (2d Cir. February 24, 2016) (internal citations omitted).

In Gotti, the Second Circuit held that "a court may order the empanelling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." Gotti, 459 F.3d at 345 (quoting Paccione, 949 F.2d at 1192) (internal quotation marks omitted).

In determining whether there is "strong reason" to believe that the jury needs protection, courts in this Circuit consider several factors including: (1) whether the defendant is dangerous, taking into account both the present charges and the defendant's criminal history, see, e.g., id. at 346 (noting pretrial detention due to dangerousness); Wong, 40 F.3d at 1377 (history of shootings); Paccione, 949 F.2d at 1192 (charged with murder and threats); United States v. Gammarano, 2007 U.S. Dist.

16

LEXIS 52059, *18-*19 (E.D.N.Y. July 18, 2007) (despite little history of violence, charges included acts and threats of violence); United States v. Wilson, 493 F. Supp. 2d 397, 398, 399-400 (E.D.N.Y. 2006) (charged murders and participation in violent street gang); (2) whether the defendant has a history of interference with the judicial process, see, e.g., Gotti, 459 F.3d at 346 (allegations of grand jury witness tampering in indictment); Aulicino, 44 F.3d at 1116 (multiple attempts at witness tampering); Wong, 40 F.3d at 1376-77 (murder and shootings of potential witnesses); Paccione, 949 F.2d at 1192 (threatening phone call to witness and murder of a defendant); Gammarano, 2007 U.S. Dist. LEXIS at *19-*22 (possibility of interference with judicial process by associates); Wilson, 493 F. Supp. 2d at 400 (attack on corrections officer and assault of individual cooperating with prison authorities in unrelated case); (3) whether the defendant, by himself or through his associates or criminal organization, has the means to interfere with the judicial process, see, e.g., Gotti, 459 F.3d at 346 (Gambino Crime Family); Aulicino, 44 F.3d at 1116 (defendant's brother); Wong, 40 F.3d at 1376-77 (Green Dragons street gang); Paccione, 949 F.2d at 1192 (Gambino Crime Family); Gammarano, 2007 U.S. Dist. LEXIS at *19-*22 (Gambino Crime Family); Wilson,

17

493 F. Supp. 2d at 399-400 (Stapleton Crew street gang); and (4) the likelihood of media interest in the trial, see, e.g., Gotti, 459 F.3d at 346; Wong, 40 F.3d at 1376-77; Paccione, 949 F.2d at 1193; Gammarano, 2007 U.S. Dist. LEXIS at *22-*23 ("Publicity enhances the likelihood that jurors['] names will become public, exposing them to intimidation or harassment. Since it is probable that the case will receive some media attention, jurors may also feel compelled to make decisions on the basis of concerns about public scrutiny or fear, rather than on the basis of the evidence presented."); United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991)(pre-trial publicity can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public).

2. Discussion

Here, all four factors outlined above warrant the empanelling of an anonymous and partially sequestered jury. First, the defendants are members of a dangerous racketeering enterprise, and are charged with committing a series of murders, attempted murders and violent crimes. Recognizing the inherent danger these defendants would present to the community if released on bond, this Court, and the United States Magistrate

Judges considering whether the defendants should be released on bond, entered permanent orders of detention. Second, as set forth in detail above, the MS-13 street gang has demonstrated a history of interference with the judicial process, including violence directed against numerous individuals, who the gang believed, correctly or incorrectly, to be government witnesses. This factor is even stronger in this case where CERNA is charged with committing two murders because of the gang's concerns about potential cooperation and an obstruction of justice attempted murder to prevent a witness from testifying against him and his co-defendant. Third, while the defendants are incarcerated pending trial, there are numerous MS-13 members and associates at liberty, who have the means to continue to interfere with the judicial process. Fourth, and finally, the case has received a moderate amount of publicity, both locally and nationally.[1]

---

[1]    See, e.g., Robert Kessler, *Fugitive MS-13 Street Gang Member Charged with 3 LI Killings, Prosecutors Say*, NEWSDAY, May 20, 2015; Timothy Bolger, *3 MS-13 Gang Members Charged with Murders*, LONG ISLAND PRESS, May 20, 2015; Alleged MS-13 Gang Members Charged in LI Murders, NEWS12, May 20, 2015; Editorial, *MS-13 Gang Epidemic Tests Obama's Amnesty Excuse*, INVESTOR'S BUSINESS DAILY, May 21, 2015; Tyler Estep, *MS-13 Gang Member Wanted For Murders Arrested in Hall Co.*, THE ATLANTA JOURNAL-CONSTITUTION, May 21, 2015; *MS-13 Is Recruiting Newly Arrived Migrant Kids in New York, Police Say*, FOX NEWS LATINO, July 28, 2015; and William Murphy, *MS-13 Gang Member Pleads Guilty to 2011 Execution-Style Murders*, NEWSDAY, March 11, 2016.

Given the coverage already received, it is foreseeable that the upcoming trial will also receive press attention on Long Island and in the surrounding metropolitan area. Thus, all four factors (the defendants' dangerousness, the MS-13's demonstrated interference with the judicial process, the MS-13's means to continue to interfere with the judicial process, and likelihood of media attention) weigh in favor of an anonymous jury.

"[B]ecause fears of retaliation may affect the jury's ability to render an impartial verdict, justice requires that when a serious threat to juror safety reasonably is found to exist, precautionary measures must be taken." Wong, 40 F.3d at 1376 (internal quotation marks omitted). In this case, the threat to juror safety is serious, and the government respectfully requests that the Court take the requested precautionary measures. Accordingly, the government respectfully requests that this Court order an anonymous and partially sequestered jury to protect the judicial process in this case.

B.   The Use Of An Anonymous Jury Will Not Deprive The
Defendants Of Meaningful Jury Selection Or Diminish
the Presumption Of Innocence

Once a district court determines that there is strong
reason to believe that the jury needs protection, it may empanel
an anonymous jury provided that it takes reasonable precautions
to minimize any potential prejudice therefrom.   See Thai, 29
F.3d at 801; Amuso, 21 F.3d at 1264-65; Paccione, 949 F.2d at
1192; Vario, 943 F.2d at 239; Tutino, 883 F.2d at 1132; Persico,
832 F.2d at 717-18; United States v. Thomas, 757 F.2d 1359, 1365
(2d Cir. 1985).   A defendant has two legitimate concerns that
are potentially affected by a decision to empanel an anonymous
jury: (1) the right to make informed choices during the jury
selection process; and (2) the right to be tried by jurors who
are not prejudiced by reason of their anonymity.   Both of these
concerns can be readily addressed.

1.   Empanelling An Anonymous Jury Will Not Hinder the
Defendants' Ability to Make Informed Choices During
Jury Selection

Although a defendant has the right to a meaningful
voir dire of potential jurors, see Rosales-Lopez v. United
States, 451 U.S. 182, 188 (1981), the decision as to the
questions to be asked in voir dire largely rests within the
informed discretion of the trial judge, see United States v.

Silva, 715 F.2d 43, 50 (2d Cir. 1983) (finding that absent a
clear abuse of discretion, trial court's ruling on questions to
be asked will not be disturbed); Barnes, 604 F.2d at 137-40
(finding, "[a]s long as a defendant's substantial rights are
protected by a voir dire designed to uncover bias as to issues
in the case and as to the defendant himself, then reasonable
limitations on the questioning should not be disturbed on
appeal"). As one court has noted, "[t]he jury selection process
(voir dire) is not a matter of constitutional dimension and the
selection of an anonymous jury was implicitly held to be
constitutional in Barnes." United States v. Gotti, 777 F. Supp.
224, 227 (E.D.N.Y. 1991) (citation omitted).

The information that will be kept from the parties and
counsel if this motion is granted is not meaningful to the jury
selection process. The names, home addresses and places of
employment of the prospective jurors are not necessary when
attempting to glean whether a juror can render a fair and
impartial verdict. Information regarding the general
neighborhoods in which the prospective jurors live and the
general nature of their work is sufficient. The names of
prospective jurors, to the extent they provide information about
ethnicity, are not relevant to meaningful voir dire. See

22

Georgia v. McCollum, 505 U.S. 42 (1992) (applying rule articulated in Batson, prohibiting use of peremptory challenges in racially discriminatory manner, to criminal defendants). The common practice in this district of extensive voir dire further acts to safeguard the defendants' rights.

> 2. The Court Can Explain The Reasons For Anonymity To Prospective Jurors In Neutral Terms That Will Eliminate The Risk Of Prejudice To The Defendants

Numerous courts have recognized that where anonymity is necessary, the jurors can receive an instruction from the court explaining the measures in a neutral way to prevent the jury from drawing any negative inference. Although the due process clause of the Fifth Amendment protects the presumption of innocence, "there is no per se rule that it may not be burdened." Thomas, 757 F.2d at 1364; see also United States v. Scarfo, 850 F.2d 1015, 1026 (3d Cir. 1988). Here, the burden is slight compared to the Court's interest in safeguarding the integrity of the judicial process and can be alleviated through a proper jury instruction.

Most commonly, courts have explained to jurors that their privacy and identities need protection from the media and the curious. See, e.g., Thai, 29 F.3d at 801; Amuso, 21 F.3d at 1265; Tutino, 883 F.2d at 1133. For example, the standard Sand

23

jury instruction regarding an "Anonymous Jury" would accurately instruct the jury and prevent any improper inferences. That jury instruction provides that:

> Ladies and gentlemen, in selecting the jury to try this case, the Court and the parties all want to make sure that your verdict will be based solely on the evidence you hear in this courtroom, as applied to the principles of law about which I will instruct you. Although there is no reason to believe anyone will try to contact you about the case, as an added precaution, and to protect your privacy, we will not ask you to state here in court your name, address, telephone number, place of employment, or other personal identifying information. Of course, the jury clerk and my staff will know your names, addresses, and telephone numbers, but we will only use them if there is a need to contact you and we will not share them with anyone else.

Sand, Modern Federal Jury Instructions, 1-5. Another avenue open to the Court is for it to explain to jurors that their anonymity would allow them to feel more comfortable in giving candid answers to the personal questions asked in voir dire. Either of these potential alternatives would provide a credible explanation to prospective jurors in this case.

With respect to its directing the jurors to park and enter the courthouse from the rear of the building, the government proposes that the Court inform the jurors that such

24

measures are being taken in order to protect their privacy and to ensure that the trial can proceed expeditiously. Certainly, the Court can explain the procedure of having the jurors park in a particular location and enter through a particular entrance in the courthouse without evoking from the jurors a negative impression of the defendants. See e.g., United States v. Tutino, 883 F.2d 1125 (2d Cir. 1989) (Given articulated need for anonymous and sequestered jury, trial court's neutral instructions regarding anonymity and sequestration deemed sufficient). In fact, the Court gave similar precautions and explanations in the recent MS-13 trials of Martinez/Ortega, Guzman and Hernandez. Other district courts in this circuit have taken similar precautions and explanations, including other cases in the Long Island courthouse, United States v. Tarantino, No. 08-CR-655 (JS)(E.D.N.Y.)(March-May 2011 and April-May 2012 (retrial)), as well as cases where jurors have been transported to and from the courthouse, United States v. Nelson, No. 94 CR 823 (DGT) (E.D.N.Y.); United States v. Orena, No. 93 CR 1366 (ERK) (E.D.N.Y.); United States v. Malpeso, No. 93 CR 1365 (RJD) (E.D.N.Y.); United States v. Cutolo, No. 93 CR 1230 (EHN) (E.D.N.Y.); United States v. Thai, No. 91 CR 838 (CBA)

(E.D.N.Y.).   Such an approach is equally appropriate in this case.

CONCLUSION

For the reasons set forth above, the government respectfully requests that its motion for an anonymous jury be granted. The government further respectfully requests that, during the trial and deliberations, the selected jurors be directed to park in the employee parking lot behind the courthouse and to enter and exit the building through the back entrance of the building.

Dated:     Central Islip, New York
           March 25, 2016

                          Respectfully Submitted,

                          ROBERT L. CAPERS
                          United States Attorney

                    By:   _____
                          John J. Durham
                          Paul G. Scotti
                          Assistant U.S. Attorneys
                          (631) 715-7851/7836

cc:   All Counsel of Record (By ECF)
      Clerk of the Court (JFB) (By ECF)